IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEE HUNT, *as Personal Representative of*
*Estate of James Butler*, and PEARL YEAST,

    Plaintiffs,

v.                                                           Civ. No. 17-682 MV/SCY

TRI-STATE CARE FLIGHT, LLC, and
VALERIE CAVIGNEAUX, *as Personal Representative*
*of Estate of David Cavigneaux*,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION TO DENY
PLAINTIFFS' MOTION TO REMAND**

Plaintiffs filed this case in state court and Defendants promptly removed it to federal court, alleging that Plaintiffs' joinder of Defendant Estate of David Cavigneaux ("Defendant Estate") was fraudulent. Doc. 1. Plaintiffs disagree and seek remand to state court. Doc. 22. United States District Judge Martha Vazquez referred Plaintiffs' motion to remand to me to issue proposed findings and a recommended disposition. Doc. 43. Because Plaintiffs do not state a cause of action against Defendant Estate and they have failed to make any allegations inside or outside the pleadings under which they could possibly prevail against Defendant Estate, I recommend denying Plaintiffs' motion for remand.

**I.**     **Factual Allegations**

In the early morning hours of July 17, 2014, a helicopter air ambulance owned by Defendant Tri-State Care Flight, LLC ("Tri-State") and piloted by David Cavigneaux crashed, killing Cavigneaux, James Butler, and Rebecca Serkey. Compl. (Doc. 1-2) at ¶¶ 76-82. Plaintiffs (the Estate of James Butler and the wife of James Butler) allege that Defendant Tri-State contacted Cavigneaux and arranged the flight without providing Cavigneaux information

1

essential to making an informed decision about whether to accept the flight. Compl. ¶¶ 77, 79-80. Specifically, Plaintiffs allege that Defendant Tri-State did not advise Cavigneaux about the dangerous weather conditions that night or that other pilots had turned down the same flight because of dangerous weather conditions. Compl. at ¶¶ 79-80. Plaintiffs also allege that Defendant Tri-State pressured pilots to take flights into dangerous weather conditions and that, when it pressured Cavigneaux to take the July 17, 2014 flight, it "either expected an injury or death to occur to a crew member like Jamie Butler, or utterly disregarded the consequences of its decisions . . .." Compl. at ¶ 90.

In contrast to the complaint's many references to Defendant Tri-State, references to Defendant Estate comprise a small part of Plaintiffs' complaint. What, if any, allegations Plaintiffs make against Defendant Estate are central to resolution of Plaintiffs' motion to remand and so discussion of allegations against Defendant Estate are incorporated into the analysis below rather than set forth now.

## II. Procedural History

Plaintiffs filed their complaint in state court on May 16, 2017. Doc. 1-2. Defendant Tri-State removed this case to federal court on June 29, 2017 based on diversity jurisdiction and the premise that Plaintiffs fraudulently joined Defendant Estate. Doc. 1 at 1-2. Plaintiffs responded to this removal by filing the present motion for remand. Doc. 22.

## III. Legal Standard

An action is removable from state court if the federal district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000). As the party invoking the Court's jurisdiction

2

in this case, Defendants "bear the burden of establishing that the requirements for the exercise of diversity jurisdiction are present." *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) abrogated on other grounds by *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014); *see also Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). There is a presumption against removal jurisdiction. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); *see also Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 F. App'x 775, 778 (10th Cir. 2005) (unpublished) (explaining that "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record.").

## IV. Analysis

Defendants do not dispute that Defendant Estate is a New Mexico resident that, if properly joined, would defeat federal diversity jurisdiction. Instead, Defendants argue that the New Mexico Workmen's Compensation Act ("WCA") precludes Plaintiffs' lawsuit against Defendant Estate and, therefore, the inclusion of Defendant Estate in this lawsuit was fraudulently done to defeat federal diversity jurisdiction. Specifically, Defendants assert that, to step outside the boundaries of the WCA and successfully sue Cavigneaux, Plaintiffs must be able to demonstrate that Cavigneaux's conduct was willful and that it proximately caused Plaintiffs' injuries. Defendants assert that Plaintiffs' complaint fails to set forth facts under which Plaintiffs' lawsuit against Defendant Estate could possibly succeed. Conversely, Plaintiffs contend that their complaint does contain allegations against Defendant Estate under which they could possibly prevail. Plaintiffs alternatively assert that the Court should allow them to amend their complaint. I agree with Defendants that Plaintiffs' complaint does not allege facts under which

3

their lawsuit against Defendant Estate could possibly succeed. I do not address Plaintiffs' request to amend their complaint because that issue is not properly before me.

Plaintiffs also argue that any deficiencies in their complaint are not fatal to their remand motion because, in considering whether Plaintiffs could possibly prevail against Defendant Estate, the Court may look outside the pleadings. If the Court does so, Plaintiffs argue, it will see that Plaintiffs' lawsuit against Defendant Estate is viable. I disagree. Defendants have met their burden of demonstrating that Plaintiffs' lawsuit against Defendant Estate could not possibly succeed and nothing Plaintiffs have cited to indicates otherwise.

Finally, Plaintiffs argue that this case is not removable because it originated under the WCA and federal law bars removal of a worker's compensation lawsuit to federal court. Doc. 23 at 15. Defendants counter that Plaintiffs are not suing under the WCA and, because Plaintiffs' claims arise outside the WCA, federal law precluding the removal of WCA cases to federal court does not apply. Defendants are correct.

### A. Law Regarding Fraudulent Joinder

"In order to invoke diversity jurisdiction, a party must show that complete diversity of citizenship exists between the adverse parties. . . . Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013). As stated above, while Defendants do not dispute that Plaintiff and Defendant Estate are both citizens of New Mexico, Defendants contend that the case was properly removed because Plaintiffs fraudulently joined Defendant Estate in an attempt to defeat diversity jurisdiction.

"To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988. "The defendant

seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (internal citation omitted).

"While a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive. Thus, in cases where fraudulent joinder is claimed, we have directed courts to 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, 203 Fed. Appx. 911, 913 (10th Cir. 2006) (quoting *Dodd v. Fawcett Publ'ns, Inc.,* 329 F.2d 82, 85 (10th Cir.1964) (citations omitted)). "In so doing, the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant. A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Nerad*, 203 F. App'x 913.

### B. Defendants Have Demonstrated That Plaintiffs Cannot Possibly Meet the *Delgado* Test

The parties agree that the New Mexico Supreme Court's decision in *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 34 P.3d 1148, provides the framework for analyzing whether Plaintiffs' claims against Defendants possibly could succeed. Doc. 23 at 1, Doc. 28 at 1, Doc. 30 at 1-2. The plaintiff in *Delgado* was the estate of a worker who died during an explosion at his employer's smelting plant. 2001-NMSC-034, ¶ 1. The estate alleged that the worker's supervisor sent the worker into an extremely dangerous situation knowing that the worker likely would be seriously hurt. *Id.* ¶ 7. In response, the defendants argued that, even if this were true, the death was still an accident and therefore damages were only recoverable under the WCA. *Id.* ¶¶ 1, 7. The New Mexico Supreme Court disagreed and held, "that when an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be

exclusively compensable under the Act, that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort." *Id.* ¶ 24. The court then further held that

> willfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when: (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Id.* ¶ 26.

The court explained that the first prong in its test "presents an objective threshold question" under which district courts must "determine whether a reasonable person would expect the injury suffered by the worker to flow from the intentional act or omission." *Id.*[1] This prong, then, begs the question of what intentional act or omission of Cavigneaux is at issue. A review of Plaintiffs' complaint does not answer this question, as the complaint focuses not on Defendant Estate's (Cavigneaux's) conduct but, instead, on the alleged conduct of co-Defendant Tri-State. The most obvious place to look for Cavigneaux's alleged intentional act or omission is the cause of action section of Plaintiffs' complaint. But Plaintiffs' complaint contains no cause of action against Defendant Estate at all. Plaintiffs entitle their only non-consortium cause of action "**Tri-State's** Willful or Reckless Misconduct Resulting in Wrongful Death." Compl. at pg.11 (emphasis added). The paragraphs that follow then fail to make any allegations against Defendant Estate. Compl. ¶¶ 85-91. Because Plaintiffs' complaint contains no cause of action against Defendant Estate, the Court can only guess at what intentional act or omission of Cavigneaux might possibly support a claim against Defendant Estate.

---

[1] The court recognized "that certain workers, such as firefighters and police, may incur injuries that are reasonably expected, but which nevertheless fail this prong because the intentional act or omission was done with 'just cause or excuse.'" *Id.* ¶ 27. Whether the need to transport the patient in this case qualified as a "just cause or excuse" is a factual issue not currently before the Court.

6

Faced with the reality that they have not brought a cause of action against Defendant Estate, Plaintiffs in their reply cite to portions of their complaint where they set forth the duties of a pilot to "identify and document the highest obstacle on the route of flight", to "hold instrument ratings", and to do a "preflight risk analysis of the weather". Doc. 41 at 4. Plaintiffs' complaint, however, does not allege that Cavigneaux failed to complete these duties.

Next, Plaintiffs cite to paragraph 78 of their complaint where they assert that "David Cavigneaux immediately accepted the flight and at 12:50 a.m. he . . . departed . . .." Doc. 41 at 4 (quoting Compl. ¶ 78). Again, however, Plaintiffs do not connect this allegation with an assertion of wrongdoing on the part of Cavigneaux. Even taking Plaintiffs' allegation as true, no reasonable person could possibly conclude, as required under the first *Delgado* prong, that simply by accepting the flight, Cavigneaux "engage[d] in an intentional act or omission, without just cause or excuse, that [was] reasonably expected to result in the injury suffered by the worker". *Delgado*, 2001-NMSC-034, ¶ 26.

Further, reading paragraph 78 in context undermines, rather than supports, Plaintiffs' argument. Paragraph 78 is contained in a section of Plaintiffs' complaint where they set forth the many pieces of information they allege Defendant Tri-State should have, but did not, provide Cavigneaux. For instance, in paragraph 77 Plaintiffs allege that Defendant Tri-State did not tell "David Cavigneaux that two other crews had declined the same flight request due to dangerous weather." Compl. ¶ 77. In paragraph 79 Plaintiffs allege, "there is no record of pilot David Cavigneaux or the medical team receiving information about the weather before taking the flight." Compl. at ¶ 79. Thus, read in context, paragraph 78 implies that Cavigneaux immediately accepted the flight because Defendant Tri-State did not provide Cavigneaux with information Cavigneaux needed to make an informed decision. Even taking as true Plaintiffs' allegation that "David Cavigneaux knew of and experienced pressure by the owners and management of Tri-

7

State to take as many flights as possible and to take undue risks in dangerous weather conditions" (Doc. 41 at 4 (quoting Compl. ¶ 81)), no reasonable person could conclude that Cavigneaux should have *expected* that he and his crew would die because of his decision to immediately accept the July 17 flight. As a result, Plaintiffs' argument that their complaint contains allegations through which they could possibly prevail against Defendant Estate based on *Delgado* is without merit.

The second prong of the *Delgado* analysis is even more difficult for Plaintiffs to possibly establish. This prong "requires an examination of the subjective state of mind of the worker or employer". *Delgado*, 2001-NMSC-034, ¶ 28. This prong is satisfied "if the worker or employer decided to engage in the act or omission without ever considering its consequences. If, on the other hand, the worker or employer did consider the consequences of the act or omission, this prong will be satisfied only when the worker or employer expected the injury to occur". *Id*. "It will not be enough, for example, to prove that the worker or employer considered the consequences and negligently failed to expect the worker's injury to be among them." *Id*.

Although not in their complaint, Plaintiffs set forth a theory of liability against Defendant Estate in their reply: "Cavigneaux succumbed to Tri-State's pressure and willfully chose not to conduct a risk assessment before flying a helicopter into deadly conditions." Doc. 41 at 1. Plaintiffs also assert that the Court may look beyond the complaint to determine whether there is any possibility that they would be able to establish a cause of action against Defendant Estate. Doc. 23 at 9. This raises the question of whether the Court may consider an argument or assertion made for the first time in a reply brief in deciding whether Plaintiffs could possibly prevail against Defendant Estate. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (indicating that "a party waives issues and arguments raised for the first time in a reply brief.").

Setting aside the issue of whether the Court should consider an allegation made for the first time in a reply brief, the Court notes that Plaintiffs' argument that the Court should look beyond Plaintiffs' complaint is a double-edged sword. This proposition of law traces back to the Tenth Circuit's decision in *Smoot v. Chicago*, *R.I. & P.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967). There, the Tenth Circuit stated, "upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Id*. at 882 (internal citations omitted). In the very next sentence, however, the Tenth Circuit concluded, "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham . . .." *Id*. Thus, it appears that, even though the Tenth Circuit allows district courts to look beyond the complaint in at least some circumstances, the Tenth Circuit also considers the joinder of a defendant against whom a cause of action has not even been asserted to necessarily have been fraudulent.

Further, even if the Court considers Plaintiffs' allegation that Cavigneaux failed to conduct a risk assessment, Plaintiffs still could not possibly prevail against Defendant Estate. This allegation sounds in negligence not willfulness, and falls short of possibly establishing that Cavigneaux subjectively "expected the injury to occur." In other words, to prevail under the second prong of *Delgado*, Plaintiffs would have to show that Cavigneaux expected that he and his crew would crash and die, but then decided to pilot the flight anyway. Plaintiffs' allegation that Cavigneaux failed to conduct a risk assessment cannot possibly support a finding that Cavigneaux subjectively expected this failure to lead to the deaths of himself and his crew. For the above reasons, I conclude that Plaintiffs have not set forth allegations under which they could possibly satisfy the second prong of *Delgado* test.

Finally, regarding the last *Delgado* prong, Plaintiffs assert in their reply that "Mr. Cavigneaux, being aware of the company's practice of disciplining pilots who refused flights,

9

gave in to the pressure and put the rest of the crew in danger by immediately accepting the flight and without assessing the risk involved. [Complaint] ¶¶ 80-81. As a direct result of Defendants' decisions in disregard of the well-known risks of flying in the conditions that existed on July 17, 2014, the air ambulance predictably crashed, killing everyone onboard, including Plaintiffs' decedent Jamie Butler and pilot Cavigneaux." Doc. 41 at 8. Again setting aside concerns that Plaintiffs raised this argument for the first time in their reply brief, I note that Plaintiffs' first allegation is inconsistent with their second. First, Plaintiffs allege that Cavigneaux put the rest of the crew in danger by immediately accepting the flight without assessing the risk involved. Taking Plaintiffs' allegations as true, Cavigneaux was unaware of the risks presented by the weather because he did not, but should have, assessed these risks. Thus, the risks Plaintiffs are really saying Cavigneaux disregarded are the risks associated with not checking the weather. Doc. 41 at 8 (Cavigneaux "put the rest of the crew in danger by immediately accepting the flight and without assessing the risk involved."); s*ee also* Doc. 23 at 5 ("David Cavigneaux knew of the Tri-State and FAA safety rules that required preflight risk assessments, but he did none."). While this omission (not checking the weather) could be a proximate cause of the crash, it is not the proximate cause Plaintiffs assert in their reply. Rather than asserting failure to check the weather as a proximate cause, Plaintiffs assert that the proximate cause of the crash was disregarding the known risk of flying "in the conditions that existed on July 17, 2014." Cavigneaux could not possibly be liable under Plaintiffs' proximate cause theory because, taking Plaintiffs' allegations as true, Cavigneaux was unaware of the conditions that existed on July 17, 2014.

For the reasons set forth above, I conclude that, with regard to Defendant Estate, Plaintiffs could not possibly establish willfulness on the part of Cavigneaux as *Delgado* requires.

As a result, I recommend that the Court find that Defendant Estate was fraudulently joined in this case and deny Plaintiffs' motion to remand on this basis.

### C. This Lawsuit Is Not Subject to WCA Prohibition Against Removal

As an alternative argument in their opening brief, Plaintiffs assert that this case cannot be removed to federal court because "[t]hese claims arise out of the wrongful actions of an employer and co-employee of James Butler" that "originated under the workers' compensation laws of New Mexico." Doc. 23 at 15. Plaintiffs point out that "[a] civil action in any State court arising under the workmen's compensation laws of such state **may not be removed to any district court of the United States."** *Id*. (quoting 28 U.S.C. § 1445(c) and adding emphasis). This argument, which Plaintiffs do not continue to pursue in their reply, is clearly without merit.

I agree with Plaintiffs that, if they were proceeding under the WCA, this Court would not have jurisdiction to hear the case. 28 U.S.C. § 1445(c). If Plaintiffs were pursuing a cause of action under the WCA, however, they would also be limited to the exclusivity provisions of the WCA and to the damages available under the WCA. That Plaintiffs are not proceeding under the WCA is first demonstrated by the fact that Plaintiffs' complaint makes no mention of the WCA. Second, the very purpose of the *Delgado* analysis Plaintiffs urge this Court to undergo is to determine whether Defendants' conduct is "outside the scope of the [WCA]." *Delgado*, 131 N.M. at 281. Plaintiffs argue it is. Indeed, Plaintiffs must argue that Defendants engaged in willful conduct because that is the only way Plaintiffs can bring a lawsuit and recover damages *outside the confines of the WCA*. In other words, the premise of Plaintiffs' lawsuit is that this case is not a workmen's compensation case. Plaintiffs cannot then credibly and simultaneously argue that section 1445(c) applies because this case is actually a workmen's compensation case.

### D. Plaintiffs' Request to Amend Their Complaint

In their motion and reply, Plaintiffs request that they be permitted to amend their complaint if the Court has any doubt as to whether they have adequately pled a *Delgado* claim against Defendant Estate. Doc. 23 at 18, Doc. 41 at 8-9. Whether Plaintiffs should be permitted to move to amend their complaint as part of their motion to remand, and in disregard of local rules addressing the process to move to amend, is a matter of discretion for the presiding judge. *See* D.N.M.LR-Civ. 15.1 (providing process to move to amend). The Court did not refer to me the question of whether Plaintiffs' request to amend their complaint is properly before the Court and, if it is, whether Plaintiffs should be permitted to amend their complaint. Absent a referral, I cannot, and do not, consider this issue.

**FOR THE ABOVE STATED REASONS, I RECOMMEND** that the Court deny Plaintiffs' Motion to Remand (Doc. 22). I further recommend that the Court dismiss Defendant Estate from the case without prejudice because Defendant Estate was fraudulently joined in this action. *See Brazell v. Waite*, 525 F. App'x 878, 884 (10th Cir. 2013) (unpublished) (indicating that dismissal without prejudice of fraudulently joined party is appropriate once court determines that the party was fraudulently joined with respect to all claims); *Anderson v. Lehman Brothers Bank, FSB*, 528 F. App'x 793, 796 (10th Cir. 2013) (unpublished) (same).

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**